IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| COREY HENDERSON,<br>AIS # 286225,<br>    Plaintiff,<br><br>v.<br><br>NURSE LETT, *Healthcare Unit*,<br>    Defendant. | )<br>)<br>)<br>)<br>)   CIVIL ACTION NO. 1:21-00036-JB-N<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION**

This civil action is before the Court on the *sua sponte* motion for summary judgment under Federal Rule of Civil Procedure 56 in favor of the Defendant, Nurse Lett (identifying herself as Sandra Lett, LPN). *See* (Docs. 13, 16, 20); Fed. R. Civ. P. 56(f)(3) ("After giving notice and a reasonable time to respond, the court may … consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."). Plaintiff Corey Henderson, an Alabama prisoner proceeding *pro se*, timely filed a response (Doc. 24) to the motion, and Lett has declined the opportunity to reply to the response (*see* Doc. 20, PageID.177). Upon due consideration of all portions of the record relevant to the issues, the undersigned finds, and will recommend, that summary judgment should be granted in favor of Lett on all federal claims, and that the Court dismiss any state law claims without prejudice after declining to continue exercising supplemental jurisdiction over them.

## I.    *Summary Judgment Legal Standards*

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "An issue of fact is 'material' if it might affect the outcome of the suit under governing law and it is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (quotations omitted). "Summary judgment is only appropriate if a case is 'so one-sided that one party must prevail as a matter of law.' " *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (citation omitted). However, a " 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (per curiam). In other words, "there must be enough of a showing that the jury could reasonably find for that party … Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quotations omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration adopted) (quotations omitted)). *See also Allen*, 121 F.3d at 646 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (quotations omitted)). "The Court 'must avoid weighing conflicting evidence or making credibility determinations.' " *Ave. CLO Fund*, 723 F.3d at 1294 (quoting *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000)). However, " 'an inference based on speculation and conjecture is not reasonable.' " *Id.*

(quoting *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)).

"Where … the non-moving party bears the burden of proof on an issue at trial, the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support its case, or present 'affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.' " *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc)). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). "For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.' " *Hammer*, 20 F.3d at 1141 (quoting *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993)).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with

significant, probative evidence demonstrating the existence of a triable issue of fact." *Four Parcels of Real Prop.*, 941 F.2d at 1438 (citations and quotations omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Allen*, 121 F.3d at 646 (quotation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Id.* (quotation omitted). "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) (citing *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.")).

## II.     *Relevant Facts*

### a.     The Complaint[1]

Per the allegations in Henderson's complaint (Doc. 1), which is affirmed under penalty of perjury and substantially constitutes an unsworn declaration under 28 U.S.C. § 1746, on January 24, 2020, while incarcerated at Fountain Correctional Facility in Atmore, Alabama, Henderson was sitting on his bunk when he began to feel numbness on his left side and dizziness. His speech also began to get slurred and slow, and he could barely talk. Another inmate escorted Henderson to the care unit. (*See* Doc. 1, PageID.4).

Pill call was being conducted when Henderson arrived at the care unit, so he got in line. Nurse Lett was working the window,[2] and when it was his turn Henderson "shared with her about the numbness on [his] left side, the dizziness etc." Lett asked him if he "smoked flocka (a synthetic drug)," and Henderson answered no. Lett then told him to leave the window. Henderson said that he doesn't "do drugs period & the whole

---

[1]
> Because [Henderson is] proceed[ing] *pro se* …, [the Court must] liberally construe his pleadings. *Trawinski v. United Techs.,* 313 F.3d 1295, 1297 (11th Cir. 2002).
>
> [The Court must] also credit the "specific facts" pled in [Henderson's] sworn complaint when considering his opposition to summary judgment. *Perry v. Thompson,* 786 F.2d 1093, 1095 (11th Cir. 1986) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form."); *Sammons v. Taylor,* 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[F]acts alleged in an inmate's sworn pleading are sufficient and ... a separate affidavit is not necessary.").

*Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).

[2] Lett has been employed by Wexford Health Sources, Inc. since April 2018. Since April 1, 20218, the Alabama Department of Corrections has contracted with Wexford to provide health care services to its inmates. (Special Report Ex. A, Lett Declaration, pp. 1-2, Doc. 16-1, PageID.69-70).

dormitory will tell you this[,]" to which Lett responded: "[A]in't nothing wrong with you, get on back to your dorm []down the hall[]." Henderson asked her to check his blood pressure, she said no, and Henderson went back to his dorm. On January 26, 2020, around 12:00 a.m./1:00 a.m., Henderson had a stroke and was rushed to an outside hospital. (*See* Doc. 1, PageID.4).[3]

### b.     Lett's Special Report

As exhibits to her special report (Doc. 16) addressing the complaint, Lett has submitted her own § 1746 declaration (Doc. 16-1), and "relevant records from Mr. Henderson's medical chart" (Doc. 16-2). Lett acknowledges that medical records from the non-prison medical providers indicate that Henderson did suffer from a stroke, though she asserts that "[t]here is nothing in Mr. Henderson's charts to indicate that in fact Mr. Henderson did have a stroke on January 24, 2020." (Doc. 16-1, PageID.76). Lett also asserts that, as a Licensed Practical Nurse, she is "not a medical provider and therefore … cannot treat … or diagnose patients." (*Id.*).

### c.     Henderson's Affidavit

Henderson has submitted a sworn affidavit (Doc. 18) in response to Lett's special report supplementing his allegations in the complaint, which among other things now claims that Lett also refused to treat him on January 26, 2020. Per the affidavit, on

---

[3] In her § 1746 unsworn declaration submitted with her special report, Lett asserts: "There is nothing in Mr. Henderson's medical chart that reveals [she] saw or communicated with Mr. Henderson at any time on January 24, 2020[,]" and that she personally has "no recollection of speaking with Mr. Henderson on January 24, 2020, or Mr. Henderson informing [her] that he was numb or dizzy … If Mr. Henderson had complained to [her] on January 24, 2020, [she] would have told Mr. Henderson to complete a sick call request or have one of the officers take Mr. Henderson to the health care unit to be seen by a medical provider." (Doc. 16-1, PageID.70-71, 76). For purposes of summary judgment, however, the Court must accept as true Henderson's version of his and Lett's interaction on January 24, 2020.

January 24, 2020, Henderson "woke up feeling terrible." He told the dorm correctional officer that he was feeling "very bad, had an excruciating headache, could not see well[, his] vision was blurry[,] and [he] had numbness and weakness in [his] left arm and leg/foot." Henderson asked, and the officer allowed, him to go to the infirmary, where Henderson encountered Lett, to whom he "presented [his] illness and these same symptons [sic]." (*Id.*, PageID.166).

Lett asked Henderson if he smoked or did drugs, and he answered in the negative. Lett "expressed doubt about [Henderson's] illness and sincerity and without examining [him] told [him] that nothing was wrong with [him]." She believed he was malingering, was skeptical of his symptoms, and though he was harassing her when he persisted. Lett ordered him back to his dorm, did not make a note of his visit or a report of his complaint and symptoms, and was "openly angry and hostile toward" him. Henderson left the infirmary after Lett "threatened [him] with disciplinary action if [he] persisted and did not immediately leave the waiting area..." Still in "severe pain," Henderson went to bed and tried to sleep. (*Id.*, PageID.166-167).

By the night of January 25, 2020, Henderson's symptoms grew progressively worse. He could hardly get out of bed and needed assistance. He skipped meals and slept through most of January 26, 2020. When he tried to go to supper in the dining hall, he could barely walk and had very little use of his left arm and hand. A friend, Keldrick Adams, helped him get his food, but the food made Henderson nauseous and he lost his appetite. On the way out, Henderson and Adams met prison officer C.O.S.I. Smith (first name unknown). After relating his symptoms to Smith, Smith told him to go to the

infirmary, and told Adams to fetch a wheel chair when he saw Henderson limping. (*Id.*, PageID.167-168).

Upon arriving at the infirmary, Henderson was confronted by Lett. Henderson told her he "had been seriously ill and was suffering from excruciating headaches for several days which were the result, [he] believed, of [his] high blood pressure." He also described the numbness and weakness in his face, left arm and hand, and left leg and foot, and requested that his blood pressure be taken. Lett "scoffed, was skeptical of [his] claims and refused to check [his] blood pressure or to give [him] a palliative." Lett became "very angry and hostile and ordered [Henderson] to leave the infirmary area." Adams pushed Henderson out of the infirmary and back down the main hallway in the wheelchair, where they again encountered Lieutenant Smith. Henderson told Smith that Lett had refused to admit him to the infirmary, and Smith told them to return to the infirmary with him. When they arrived, Smith demanded that Lett check Henderson's blood pressure, which she did. After discovering that Henderson's blood pressure was "dangerously high," she "immediately admitted [him] to the infirmary." An ambulance was called soon after, and Henderson was taken to outside care, where it was determined he had suffered as stroke. After being returned to Fountain Correctional, Henderson spent four or five days in the inmate convalescence ward. As of the making of the affidavit, Henderson has recovered approximately 25% normal usage of his left arm and hand, and 20% of his left leg and foot. (*Id.*, PageID.168-169).[4]

---

[4] It is worth noting that none of the Wexford Health medical records for Henderson from January 26, 2020, are signed by Lett, and are instead signed by another LPN and a registered nurse (RN). (*See* Doc. 16-2, PageID.77-81).

### III.   *Analysis*

#### a.   **Deliberate Indifference to a Serious Medical Need**

Henderson alleges that Lett's denial of medical assistance constituted deliberate indifference. "Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs, giving rise to a cause of action under [42 U.S.C.] § 1983." *McKeithen v. Jackson*, 606 F. App'x 937, 939 (11th Cir. 2015) (per curiam) (unpublished) (citing *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)).

"To prevail on a deliberate indifference to serious medical need claim, Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

> The Supreme Court has cautioned that not every allegation of inadequate medical treatment states a constitutional violation. *Estelle…,* 429 U.S. [at] 105, 106, 97 S. Ct. [at] 291… "In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id.* at 106–07, 97 S. Ct. at 292. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* … [I]n order to prove that a de[fendant] acted with deliberate indifference, Plaintiffs[] must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence." *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir. 2004).

*Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009). Lett's special report argues that Henderson cannot show that she had subjective knowledge of a risk of

serious harm to him when she allegedly did not provide him treatment. The undersigned agrees.

> [I]n *Farmer v. Brennan,* 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994), the Supreme Court explained further the requisite "subjective component" of a conditions-of-confinement claim and defined the exact subjective mental state required for "deliberate indifference," as follows:
>
>> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.*
>
> *Id.* at 837–38, 114 S. Ct. 1970 (emphasis added) (internal citation omitted). Thus, in light of *Farmer,* liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk. *Id.* at 837, 114 S. Ct. 1970. Proof that the defendant should have perceived the risk, but did not, is insufficient. *Id.* at 838, 114 S. Ct. 1970; *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) ("There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not ….' " (quoting *Farmer,* 511 U.S. at 838, 114 S. Ct. 1970)). Thus, the official must have a subjectively " 'sufficiently culpable state of mind.' " *Cottrell,* 85 F.3d at 1491 (quoting *Farmer,* 511 U.S. at 834, 114 S. Ct. 1970). This "requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' " *Farmer,*

> 511 U.S. at 834, 114 S. Ct. 1970 (quoting *Wilson,* 501 U.S. at 297, 111 S. Ct. 2321).

*Campbell v. Sikes*, 169 F.3d 1353, 1363–64 (11th Cir. 1999).

> "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." [*Farmer*, 511 U.S.] at 842, 114 S. Ct. 1970. The trier of fact may, therefore, "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* Nevertheless, it is only a heightened degree of culpability that will satisfy the subjective knowledge component of the deliberate indifference standard, a requirement that "is far more onerous than normal tort-based standards of conduct sounding in negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013).

*Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320–21 (11th Cir. 2016).

Henderson has not provided any evidence of prior interactions with Lett to indicate that she was, or should have been, aware that he was at risk for a stroke or was otherwise dangerously unwell. Moreover, while on both occasions Henderson described to her his symptoms of pain, numbness, blurry vision, and dizziness, and on the second occasion had to be brought to the infirmary by wheelchair with the assistance of another inmate, Henderson has not alleged facts indicating that his outward symptoms as Lett saw them were so extreme that the risk he was experiencing a serious medical emergency, as opposed to her belief that he was faking symptoms or was on drugs, should have been "obvious" to Lett.[5] Indeed, as Henderson himself notes, Lett's refusal

---

[5] *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1330 (11th Cir. 2007) ("[A]n official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, *knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay.*" (emphasis added)); *Smith v. Franklin Cty.*, 762 F. App'x 885, 891 (11th Cir. 2019) (per curiam) (unpublished) ("While the record offers no explanation for the 25-minute delay in checking on Smith, there is likewise no evidence to indicate that Parker knew that Smith's general appearance of looking unwell meant that he 'had a life-threatening condition or an urgent medical

to provide him treatment on January 24, 2020, and again two days later, was based on her belief that he was either malingering or was experiencing the side-effects of illicit substances. Henderson does not claim that the belief was not genuine or was a pretext hiding some other motive. Thus, even if Lett could be said to have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," her belief, however unreasonable, that Henderson was not in fact in medical distress precludes a finding that Lett "dr[e]w the inference" that Henderson was at substantial risk of serious harm. Henderson also admits that, after Lett finally did take his blood pressure and saw it was dangerously high, she "immediately" admitted him to the infirmary and he received medical care.

Even considering the evidence in the light most favorable to Henderson, and drawing all reasonable inferences in his favor, he has failed to produce sufficient evidence suggesting that, at either time Lett refused to examine him, she was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and … also dr[e]w the inference." Accepting as true Henderson's version of the events, which the Court must at this stage, Lett's "failure to alleviate a significant risk that [s]he should have perceived but did not" by refusing to believe Henderson's reports of his symptoms and ordering him to leave the infirmary, "while no cause for

---

condition that would be exacerbated by delay.' " (quoting *Goebert*, 510 F.3d at 1330)). *But see McElligott v. Foley*, 182 F.3d 1248, 1256 (11th Cir. 1999) (finding that prison doctor and nurse could reasonably be found to be subjectively aware of a substantial risk of serious harm where, although doctor did not diagnose or know the plaintiff had colon cancer, doctor's notes from multiple exams over a span of months indicated awareness of serious abdominal pain, plaintiff had made "nearly constant complaints about the pain he was having" to both the doctor and nurse since the outset of his incarceration, and the plaintiff experienced extensive deterioration and weigh loss in his last months at the jail).

commendation," is insufficient to show that she acted with sufficient subjective mental culpability to support a claim for deliberate indifference under § 1983.[6]

Accordingly, summary judgment is due to be **GRANTED** in favor of Lett on Henderson's § 1983 deliberate indifference claim.[7]

### b. State Law Claims

Henderson does not assert any other federal claims in his complaint. As diversity of citizenship under 28 U.S.C. § 1332 is not alleged or apparent as a basis for subject matter jurisdiction, granting summary judgment to Lett on the deliberate indifference claim disposes of all claims over which the Court has original jurisdiction. To the extent Henderson has also asserted claims against Lett under state law, the undersigned will recommend that the Court decline to continue exercising supplemental jurisdiction over those claims and accordingly dismiss them without prejudice. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction…"); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (noting that § 1367(c) "strongly encourages or even requires dismissal of state claims" if federal claims are dismissed prior to trial).

---

[6] Because Henderson's failure to satisfy this element is dispositive of his § 1983 deliberate indifference claim, the undersigned expresses no opinion on his ability to satisfy any of the other elements of such a claim.

[7] To the extent Henderson's "Response to Court's Order" dated October 28, 2021(Doc. 24), was intended to be a motion for summary judgment in Henderson's favor on his deliberate indifference claim, it is due to be **DENIED** for the same reasons.

### c. Discovery Motions

In Henderson's "Response to Court's Order" dated October 28, 2021 (Doc. 24), which was accompanied by what appear to be discovery requests (Doc. 26), Henderson appears to indicate that he should be allowed to depose Lett, Smith, and Adams, and to propound interrogatories, requests for production, and requests for admission on Lett, prior to the Court ruling on summary judgment. He has also submitted a motion to proceed *in forma pauperis* so that he can be found indigent for purposes of having the Court cover certain expenses and perform certain duties related to discovery. (Doc. 25).[8]

However, since Henderson was present for all events relevant to his claims, he is capable of providing all necessary facts by his own affidavit. While deposing those individuals may provide corroborating evidence, Henderson's own testimony does not need to be corroborated in order to create a genuine issue of material fact. *See United States v. Stein*, 881 F.3d 853, 858–59 (11th Cir. 2018) (en banc) ("A non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated."); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("…Feliciano's sworn statements that Gonzaga was not holding anything in his hands when he emerged from the bedroom into the officers' view, that neither she nor Gonzaga was smoking marijuana, and that there was no marijuana odor in the apartment are not conclusory. They are non-conclusory descriptions of specific, discrete facts of the who, what, when, and where variety. They describe the external world as Feliciano observed it at the time and are based on her first-hand personal knowledge, not her subjective beliefs. And they directly contradict

---

[8] Henderson paid the full filing fee for this case at the outset. Therefore, the Court has not yet made an indigency determination for him under 28 U.S.C. § 1915.

the officers' assertions about what they observed before and after they entered the apartment. The contradiction presents a classic swearing match, which is the stuff of which jury trials are made."). At the very least, Henderson has not convinced the undersigned that any additional discovery can cure his failure to present sufficient evidence of Lett's subjective knowledge with regard to his deliberate indifference claim, *see supra*. Accordingly, Henderson's discovery requests (Doc. 26) and IFP motion (Doc. 25) are due to be **DENIED as MOOT**.

### d. Defendant's Proper Name

Finally, as Henderson does not dispute that the Defendant's full name is Sandra Lett, the undersigned will recommend that the docket be updated to identify the Defendant as "Sandra Lett, LPN."

### IV. *Conclusion & Recommendations*

In accordance with the foregoing analysis, and pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S), the undersigned **RECOMMENDS** as follows:

- that the Clerk of Court be **DIRECTED** to update the docket to identify the Defendant as "Sandra Lett, LPN;"
- that Henderson's motion for summary judgment (Doc. 24) be **DENIED**;
- that summary judgment be **GRANTED** in favor of Lett on Henderson's § 1983 deliberate indifference claim;
- that the Court thereafter decline to continue exercising supplemental jurisdiction over any state law claims and **DISMISS** those claims **without prejudice**;
- that Henderson's discovery requests (Doc. 26) and IFP motion (Doc. 25) be

**DENIED as MOOT**; and

- that final judgment in accordance with those rulings by separate document in accordance with Federal Rule of Civil Procedure 58.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 15th day of February 2022.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**